UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL ASBURY VANLANDINGHAM, JR.,

        Petitioner,

                                    Case Number: 05-10249

v.                                     Honorable David M. Lawson

KENNETH MCKEE,

        Respondent.

_____/

## CORRECTED OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Randall Asbury Vanlandingham, Jr., a state prisoner currently confined at Mound Correctional Facility in Detroit, Michigan, filed a petition for writ of habeas corpus through counsel when he was an inmate at Bellamy Creek Correctional Facility in Ionia, Michigan where Kenneth T. McKee was the warden. Vanlandingham challenges his convictions for one count of first-degree criminal sexual conduct, Mich. Comp. Law § 750.520(b)(1)(a) and two counts of second-degree criminal sexual conduct, Mich. Comp. Law § 750.520c(1)(a). He was accused of sexually assaulting five young girls who were part of a church youth group over a period of several months, and he says that the state trial judge's erroneous evidentiary rulings so inhibited his ability to challenge victims' credibility that he was denied his rights under the Confrontation Clause. The respondent filed an answer in opposition. The Court finds that although the state court judge committed multiple evidentiary errors, the errors do not amount to a deprivation of rights secured by the Constitution or laws of the United States. Therefore, Vanlandingham is not entitled to relief under 28 U.S.C. § 2254, and his petition will be denied.

I.

The petitioner was charged with eight counts of second-degree criminal sexual conduct and one count of first-degree criminal sexual conduct as a result of the complaints of five different minor females that he sexually assaulted them. He was convicted of three of those counts on March 18, 2002 following a jury trial in Shiawassee County, Michigan circuit court. The acts were alleged to have occurred on different dates during the summers of 2000 and 2001.

The petitioner was a minister who was in charge of the Owosso, Michigan branch of The Salvation Army. Because the five complainants were active in The Salvation Army church and youth groups, it was not unusual for these complainants to have contact with the petitioner and be guests in his home. Each of the five complainants testified that the petitioner sexually abused them in a basement room of his home.

Before trial, the petitioner filed a motion to suppress the victim's testimony because it was tainted by the suggestive interview techniques used by the investigators in the case. The trial court conducted an evidentiary hearing at which it limited the time the parties could spend on witness examination. That court also prevented the petitioner from calling expert witnesses at the hearing. The suppression motion was denied and the victims were permitted to testify at trial.

All five victims did testify at trial and described their encounters with the petitioner. All of the victims were under twelve years old at the time of their association with the petitioner. They all described incidents of sexual contact, except that one witness, E.S., also said that the petitioner penetrated her with his finger. A pediatrician who examined E.S., Dr. Stephen Guertin, testified as to his findings, but the petitioner was prevented from eliciting from him prior inconsistent statements made to him by E.S.

Another victim, T.R., who was nine years old at the time of trial, testified that the petitioner massaged her vaginal area with his fingers and a "massager thing" in the basement room. Trial Tr., March 5, 2002 at 350-55. She said that on another occasion, the petitioner rubbed his genital area while wearing only boxer shorts in front of her. T.R.'s mother, Holly Ramos, also testified and provided background and circumstantial information about her daughter's involvement in the Salvation Army organization's youth group. The petitioner was prohibited by the trial judge from impeaching Ms. Ramos by asking her questions focusing on her intention to sue the Salvation Army over the accusations against the petitioner. The petitioner argued that the evidence would show bias.

The other victims described their encounters as follows: J.C., who was in seventh grade at the time of trial, testified that one evening while at the petitioner's home, he touched her chest and vaginal area. She also testified that on another occasion, the petitioner placed cake frosting on her vaginal area and licked it off; and on another occasion, the petitioner forced her to rub herself against his genital area. A.S., who was seven years old at the time of trial, testified that the petitioner massaged her with a "massager" on her belly and between her legs over her clothing while she was in the basement room. T.S., who was ten years old at the time of trial, testified that while clothed, the petitioner tickled her belly on an occasion while watching movies in the basement room, but the tickling moved from her belly to between her legs.

The defense theory was that the complainants were not credible and their testimony was tainted by overzealous parents, interviewers, and investigators in their efforts to convict the petitioner for sexually abusing the children. Defense counsel referred to the testimony of the prosecution's two expert witnesses, Dr. Guertin (who had examined E.S.) and Dr. Terence Campbell, a forensic psychologist, to explain the proper procedures and protocol for interviewing

children about suspected sexual abuse. It was petitioner's position that the manner in which the complainants were questioned about the petitioner's alleged sexual misconduct departed from these procedures and led to the complainants making false allegations of sexual abuse against the petitioner.

The petitioner testified on his own behalf and admitted that many children from the church youth groups spent the night at his home. He also admitted that he would watch videos with the kids in the basement while sitting on a mattress, as there was no other seating in the room. However, he testified that he never got under the covers with any of the girls, nor did he engage in any sexual misconduct with any of the complainants. The petitioner denied that he was ever alone in his home with any of the complainants. He further denied that he engaged in any sexual misconduct with any of the girls. The petitioner also denied inviting any of the five complainants to his home to spend the night and denied having any overnight guests while the rest of his family was away.

Karen Vanlandingham, the petitioner's wife, corroborated the fact that children from the youth groups would spend the night. She also testified that while they were visiting, they would watch videos in the basement, eat food, and the petitioner would join them sometimes and sit on the mattress, as there was no other seating in the room. She also testified about her marriage to the petitioner and how they got involved with The Salvation Army ministry.

After deliberating, the jury convicted petitioner on the first-degree criminal sexual conduct charge related to E.S. and on the two second-degree criminal sexual conduct charges involving J.C. The jury ended deadlocked on the charge involving T.R. The jury acquitted the petitioner of all other charges. The petitioner was sentenced on April 19, 2002 to concurrent prison terms of fifteen

to forty years for the first-degree criminal sexual conduct conviction and ten to fifteen years for each second-degree criminal sexual conduct conviction. There is no evidence that the State retried the petitioner for the charge involving T.R.

Following his conviction and sentencing, the petitioner, through counsel, filed a direct appeal in the Michigan Court of Appeals raising four issues, all challenging the trial court's evidentiary rulings, and some of which are included in the petitioner's grounds in this Court. The court of appeals affirmed the petitioner's convictions on December 2, 2003. *People v. Vanlandingham,* 2003 WL 22850027 (Mich. Ct. App. Dec. 2, 2003). The petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same four issues, and the state supreme court denied leave to appeal in a standard order. *People v. Vanlandingham,* 471 Mich. 881, 686 N.W.2d 747 (Sept. 24, 2004) (table).

Thereafter the petitioner filed this federal habeas petition for writ of habeas corpus asserting the following three claims:

> I. THE TRIAL JUDGE VIOLATED PETITIONER'S CONSTITUTIONAL RIGHT TO CONFRONT THE WITNESSES AGAINST HIM BY SUSTAINING THE PROSECUTION'S OBJECTION TO THE PETITIONER'S QUESTIONING THE MOTHER OF ONE OF THE COMPLAINANTS AS TO WHETHER SHE WAS CONTEMPLATING FILING A CIVIL LAWSUIT BECAUSE THE PROPOSED CROSS-EXAMINATION WAS CLEARLY RELEVANT TO SHOW BIAS AND INTEREST.
>
> II. THE TRIAL JUDGE DENIED PETITIONER HIS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM BY REFUSING TO ALLOW PETITIONER TO CROSS-EXAMINE DR. GUERTIN REGARDING PRIOR INCONSISTENT STATEMENTS MADE TO HIM BY COMPLAINANT EMILY SMITH.
>
> III. THE TRIAL JUDGE DENIED PETITIONER HIS DUE PROCESS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM AND PRESENT A DEFENSE BY DENYING PETITIONER THE OPPORTUNITY TO PRESENT RELEVANT AND PROBATIVE EXPERT TESTIMONY AT THE PRE-TRIAL EVIDENTIARY ("TAINT") HEARING HELD IN CONNECTION WITH HIS

MOTION TO SUPPRESS THE TESTIMONY OF THE FIVE COMPLAINANTS ON GROUNDS THAT THE RELIABILITY OF THEIR TESTIMONY HAD BEEN IRREPARABLY COMPROMISED BY IMPROPER AND SUGGESTIVE INTERVIEW TECHNIQUES, AND BY PLACING THE BURDEN OF PROOF SOLELY ON PETITIONER DESPITE A PRIMA FACIE SHOWING THAT INTERVIEWERS HAD FAILED TO COMPLY WITH THE INTERVIEW PROTOCOLS.

The respondent has filed an answer to the petition asserting that petitioner's constitutional rights were not implicated as defined by established Supreme Court law.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first claims that the trial court impermissibly limited the scope of cross-examination when it refused to allow defense counsel to question Holly Ramos, the mother of Taylor, about whether she planned to initiate a civil lawsuit against The Salvation Army due to the petitioner's alleged sexual misconduct. The petitioner wanted to confront Ms. Ramos on this issue in order to show that she has an inherent bias and motive to provide the Court and the jury with damaging testimony about the petitioner in an effort to bolster the substance behind her civil lawsuit. The petitioner also asserts that testimony on the issue would have adversely affected her credibility as a witness in the criminal trial. The trial testimony exchange was as follows:

> Q: This conversation, this telephone conversation you had with Theresa Holmes, did you have occasion to tell her that it was your intention to sue the Salvation Army?
> Mr. WINIGER: Objection. Relevance.
> THE WITNESS: No, I didn't put it that way.
> Mr. WINIGER: Hold on.
> THE COURT: Just a second. Just a second.
> Mr. WINIGER: Objection.
> THE COURT: Did you say Theresa Homes?
> MR. ASHLEY: Correct.
> THE COURT: I will sustain the objection.
> MR. ASHLEY: This would be their witness's own comments, not what Theresa Homes said to her.
> THE COURT: I will sustain the objection at this time.

Trial Tr., March 5, 2002 at 332-33. The Michigan Court of Appeals rejected the petitioner's claim concluding:

> Even if the trial court erred in precluding inquiry into the matter, given its relevance to the witness' possible bias or interest, *see People v. Grisham*, 125 Mich. App. 280, 284-285; 335 N.W.2d 680 (1983), we are satisfied that it was harmless beyond a reasonable doubt considering that it did not bear directly on the credibility of the child victims, and that its significance was minimal in the face of the number of child victims and other witnesses who testified. *People v. Belanger*, 454 Mich. 571. 576; 563 N.W.2d 665 (1997).

*People v. Vanlandingham*, 2003 WL 22850027 at *2.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas,* 380 U.S. 400, 403 (1965). The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Pointer*, 380 U.S. at 404-05 (quoting *Greene v. McElroy,* 360 U.S. 474, 496-97 (1959)). Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth." *California v. Greene*, 399 U.S. 149, 158 (1970) (citation and internal quotations omitted).

The Sixth Circuit has held consistently that although cross-examination is a necessary component to the preservation of an accused's rights under the Confrontation Clause, the right to cross-examine is not limitless. *Stewart v. Wolfenbarger,* 468 F.3d 338, 347 (6th Cir. 2006). When

a trial judge allows but limits cross-examination, "the key inquiry is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Id.* at 348 (quoting *Dorsey v. Parke,* 872 F.2d 163, 167 (6th Cir. 1989)). The pivotal point, according to the Sixth Circuit, is whether "the defense is not allowed to plac[e] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *Dorsey*, 872 F.2d at 167 (alteration and emphasis in original) (internal quotation marks omitted). "[I]t is the state's prerogative to define what evidence is relevant to the case in the first place." *Miskel v. Karnes,* 397 F.3d 446, 452 (6th Cir. 2005) (citing *Jackson v. Virginia,* 443 U.S. 307, 324 n. 16 (1979)).

It is apparent here that the state trial judge unreasonably curtailed the petitioner's cross-examination of Holly Ramos. Basic to the right of cross-examination is the opportunity to impeach adverse witnesses. Impeachment is a challenge to the witness's inclination to tell the truth and her ability to do so. The cross-examiner must be allowed to examine defects in the witness's ability to perceive and remember events, clear up ambiguities, test the witness's ability to communicate accurately, and explore character defects or motives that might induce the witness to shade her testimony or to lie. The Sixth Amendment's Confrontation Clause guarantees the accused the right to cross-examine adverse witnesses to uncover possible biases and expose the witness's motivation for testifying. *See Davis v. Alaska*, 415 U.S. 308, 316-317 (1974). If Ms. Ramos had a financial motive for testifying against the petitioner, or she had something to gain from a lawsuit against the petitioner, the petitioner should have been allowed to elicit that evidence and present it to the jury.

The Michigan Court of Appeals in this case does not appear to have taken a stance on whether the petitioner's Confrontation Clause rights actually were violated. Instead, that court

determined that any error in that evidentiary ruling was harmless. Confrontation Clause challenges are subject to review for harmless error. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Therefore, this Court must determine whether the state court's harmless error analysis unreasonably applied federal law as determined by the Supreme Court.

In *Fry v. Piller*, __ U.S. ___ , 127 S. Ct. 2321 (2007), the Supreme Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson,* 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California* , 386 U.S. 18 (1967)] . . . " 127 S.Ct. at 2328. *Fry* overruled *Eddleman v. McKee,* 471 F.3d 576, 583 (6th Cir. 2006), where the Sixth Circuit concluded that "AEDPA replaced the *Brecht* standard with the standard of *Chapman* plus AEDPA deference when, as here, a state court made a harmless-error determination." *See Wilson v. Mitchell*, 498 F.3d 491, 503 (6th Cir. 2007).

Therefore, to resolve the petitioner's first claim, the Court must determine whether the curtailment of the petitioner's cross-examination of Ms. Ramos "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (internal quotations omitted). This Court has no trouble concluding that it did not.

Holly Ramos' testimony did not provide first-hand observational evidence and she did not witness any of the alleged sexual misconduct by the petitioner. Ms. Ramos' testimony was circumstantial, consisted of background information, and for the most part was inconsequential. Most importantly, however, the petitioner was not convicted of criminal sexual misconduct as it related to T.R., Ms. Ramos's daughter, as the jury deadlocked on that count. Therefore, any motive

-11-

that Ms. Ramos had to testify falsely could not have affected the jury's decision, since that testimony related only to a count on which the jury did not convict. The Court must deny habeas relief on this claim.

B.

The petitioner next argues that his confrontation rights were violated when the trial court precluded defense counsel from questioning Dr. Guertin about inconsistent statements made to Dr. Guertin by E.S. about the presence of blood in her underwear. Ten-year-old E.S. testified at trial that while she was in the basement room of the petitioner's home, the petitioner touched her vaginal area, penetrated her digitally, and touched her chest. She also testified, "Whenever I went to the bathroom, I had blood." Trial Tr., March 7, 2002 at 786. E.S. later admitted that she failed to tell the investigating officer about the blood, but that she "believe[d]" she told the examining doctor. *Id.* at 819. On cross-examination, E.S. testified about an incident where two boys pulled her into a bush, forcibly removed her pants and underwear, and touched her vagina, but she stated that neither boy penetrated her vagina.

Dr. Stephen Guertin, a pediatrician, testified that he examined E.S. Although he testified that his examination of E.S. showed a healed laceration on her hymen, he testified that the injury could have been caused by something other than sexual penetration. The petitioner attempted to cross-examine Guertin about statements E.S. made to him, but the trial court sustained the prosecution's objection:

> Q. Did she demonstrate or indicate a blood discharge?
> A. She did not. She only indicated that it hurt.
> Q. Did you specifically ask her that question?
> A. Yes.
> MS. EDWARDS: Objection. Hearsay.
> THE COURT: Sustained.

-12-

>MR. ZALESKI: If he asked her the question –
>MS. EDWARDS: Your Honor, I'm going to object.
>THE COURT: Yes. Again, the ruling is to confine it to the demonstration and the reason is that the medical exam was for purposes of the litigation as opposed to treatment in this case.
>>So with that understanding, generally, let's proceed.

Trial Tr., March 11, 2002, at 1042. Later, the trial court revisited the issue outside the presence of the jury:

>MR. ZALESKI: . . . [T]he first point is, Judge, you know, it's our belief that Dr. Guertin took statements from this girl and that we should have had a right to question her regarding the inconsistency of those statements. They are not being offered for their truths, they are prior inconsistent statements. First and foremost, she clearly the [sic] testified to the jury here that there was blood. She told Dr. Guertin there was no blood present when she was – when this happened. The second --
>THE COURT: And he testified to that.
>MR. ZALESKI: Well, I don't think it was very clear.
>THE COURT: Well, he testified to that.
>MR. ZALESKI: Okay.
>THE COURT: Whether it was clear, I would have to presume that when somebody testifies, the jury hears what they say.

*Id.* at 1050.

The petitioner challenged that evidentiary ruling on direct appeal. The Michigan Court of Appeals stated as follows:

>Defendant also argues that the trial court erred by prohibiting him from cross[-]examining a physician about statements allegedly made by one of the child complainants [E.S.]. The complainant testified at defendant's preliminary examination that she saw blood in her underwear after defendant digitally penetrated her. As a result of her testimony, the child was taken to Dr. Guertin for medi[c]al examination.
>
>At trial, the child testified that she believed she told Dr. Guertin about the blood in her underwear. The child also testified that defendant was always kind to her and that she did not remember him ever threatening her. Dr. Guertin testified at trial that he took an oral history from the child, and that she demonstrated with dolls that "the girl doll was laying on its belly and an adult male doll laying next to it and then the adult male doll, using its hands coming from behind, starting where the child's buttocks are and then moving under the child to be able to touch the child's vaginal

-13-

> area. So between the legs from the back to the front while the child was laying on its belly." Dr. Guertin testified that his physical examination of the child, which revealed that he hymen had been injured, was consistent with the complainant's demonstration.
>
> Defense counsel sought to question Dr. Guertin about what the child told him during the oral history, but, because the medical examination was conducted for purpose of litigation rather than treatment, the trial court ruled that Dr. Guertin could only testify about what the child demonstrated, not about what she said. Defense counsel asked Dr. Guertin whether the child demonstrated or indicated a blood discharge, and Dr. Guertin replied that she did not, "she only indicated that it hurt." The court reiterated its ruling that Dr. Guertin could only testify about what the child demonstrated, but did not strike Dr. Guertin's answer or tell the jury to disregard it.

*People v. Vanlandingham,* 2003 WL 22850027, at *2. The Michigan Court of Appeals addressed this issue under Mich. R. Evid. 613(b) without any direct discussion of the Confrontation Clause as to this issue. However, the state appellate court determined that the trial court did not err in excluding the extrinsic evidence of E.S.'s inconsistent statements.

Once again, it is apparent that the state courts committed evidentiary error in prohibiting defense counsel's attempt to elicit extrinsic evidence of the victim's prior inconsistent statements. The problem has its roots in the idea that E.S.'s demonstrative conduct in response to Dr. Guertin's examination questions was somehow immune from the hearsay rules. That ruling ignores the well-established concept that assertive conduct can amount to a "statement" within the meaning of the hearsay rule defined by Michigan Rule of Evidence 801(c). *See* Mich. R. Evid. 801(a)(2). Moreover, the admissibility of E.S.'s trial testimony that she told Dr. Guertin about blood in her underwear is in doubt, since E.S. was describing her own out-of-court statement that was offered to prove the substance of what she was saying. It possibly might have been admissible as a prior consistent statement under rule Michigan Rule of Evidence 801(d)(1)(B) or as an exception under Rule 803A, but the foundational requirements of those rules were never explored by the trial judge.

Nonetheless, once E.S. was allowed to tell the jury that she complained about bleeding to Dr. Guertin, the petitioner had a right under state evidence law to elicit evidence of a prior inconsistent statement from Dr. Guertin. *See* Mich. R. Evid. 613(b). A witness who testifies at trial may be impeached by testimony from her physician if she made an inconsistent statement to that physician, even if it does not fall within a hearsay exception. *See Bradbury v. Ford Motor Co.*, 123 Mich. App. 179, 187-88, 333 N.W.2d 214, 217-18 (1983), *modified on other grounds by* 419 Mich. 550, 358 N.W.2d 550 (1984). "[I]nconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *People v. Chavies*, 234 Mich. App. 274, 282, 593 N.W.2d 655, 659 (1999) (internal quotations omitted), *abrogated on other grounds by People v. Williams*, 475 Mich. 245, 716 N.W.2d 208 (2006). When a witness testifies at trial that he "remember[s] nothing," his prior statements can be introduced as impeachment as prior inconsistent statements. *Id.* at 282-83, 593 N.W.2d at 659.

But the inability to offer extrinsic evidence of a prior inconsistent statement does not necessarily trench upon the Confrontation Clause. "The Confrontation Clause . . . 'guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007) (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)). The Confrontation Clause is generally satisfied when the defendant is given a full and fair opportunity to probe and expose the testimonial infirmities through cross-examination, thereby calling to the attention of the factfinder the reason for giving scant weight to the witness' testimony. *Delaware v. Fenster,* 474 U.S. 15, 20 (1985).

The petitioner's Confrontation Clause rights may be violated if he is denied the opportunity to cross-examine the witness regarding her own prior inconsistent statement. *See Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005). But the petitioner had the opportunity to cross-examine E.S. fully. Mindful of the review standard imposed by the AEDPA, the Sixth Circuit recently observed, "[t]he Supreme Court has not recognized the sweep of the Confrontation Clause to extend beyond guaranteeing the criminal defendant's rights to physically confront and cross-examine adverse witnesses to encompass the right to impeach an adverse witness by putting on a third-party witness." *Harrington v. Jackson*, 1 F. App'x 367, 370 (6th Cir. Jan. 10, 2001); *see also Farley v. Lafler*, 193 F. App'x 543, 547 (6th Cir. Aug. 24, 2006); *Boggs v. Collins*, 226 F.3d 728, 738 (6th Cir. 2000) (holding that state rule limiting use of certain types of extrinsic impeachment does not violate the Confrontation Clause); *Hogan v. Hanks*, 97 F.3d 189, 191 (7th Cir. 1996).

Finally, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). "Since this Court does not review state court evidentiary rulings, our review is limited to whether Petitioner can demonstrate a violation of his federal constitutional rights." *Haliym*, 492 F.3d at 700. The erroneous admission or exclusion of evidence, although not amounting to a Confrontation Clause violation, may violate a criminal defendant's rights under the Due Process Clause. However, only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Court finds that the multiple evidentiary errors committed by the state trial judge concerning the prior statements of E.S. did not render the petitioner's trial fundamentally unfair.

Although cross-examination of Dr. Guertin was significantly curtailed, the jury did hear that E.S. never told him that she had found blood in her underwear. The significance of that symptom was diminished somewhat by the other testimony Dr. Guertin furnished, and the petitioner's attorney was allowed to explore that in some detail. The cross-examination of the victim and an examining physician was sufficiently complete to give the jury a fair picture of the evidence it was called upon to evaluate. The petitioner's rights under the Due Process Clause were not violated.

The petitioner is not entitled to relief on his second claim.

## C.

For his last claim, the petitioner contends that he was denied the right to confront witnesses and to present a defense at a pretrial evidentiary hearing held by the trial court to determine whether the victims' testimony should be suppressed. The petitioner sought to prove through testimony at the hearing that the complainants' statements regarding the petitioner's alleged sexual misconduct were the product of suggestive or coercive interview techniques. The petitioner argued that the complainants' trial testimony would be tainted and prejudicial to the petitioner's interests. In his petition, the petitioner argues the trial court severely limited the scope of the hearing by placing time restrictions on the amount of time witnesses could be questioned, and he was prevented from presenting probative expert witness testimony. The trial court limited the defendant to three witnesses, and permitted only thirty minutes of examination per witness per side.

"[T]he Supreme Court has repeatedly explained that '[t]he right to confrontation is basically a trial right.'" *United States v. Burke*, 345 F.3d 416, 426 (6th Cir. 2003) (quoting *Barber v. Page*, 390 U.S. 719, 725 (1968)). This right does not extend to every motion hearing that a court may

decide to hold. At trial, the petitioner was provided the opportunity to conduct an effective cross-examination of each witness and presented a vigorous defense.

Even if the Confrontation Clause did apply, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Limiting examination to thirty minutes per witness is a reasonable limit under the circumstances.

Moreover, under state law, the trial judge was not required to hold an evidentiary hearing at all to address the question of improper influence of the victims. *See People v. Hanks*, 276 Mich. App. 91, 96-97, 740 N.W.2d 530, 534 (2007) (holding that Michigan does not require that trial courts hold a hearing when a defendant challenges the reliability of witnesses); *People v. Bush*, 2003 WL 22271453, at *2 (Mich. Ct. App. Oct. 2, 2003) ("Currently, there is no statute, court rule, or rule of evidence that requires or sets forth procedure for conducting a taint hearing in cases alleging sexual abuse of a minor."). Limiting the testimony offered at such a hearing, therefore, would not contravene the Confrontation Clause. There is no evidence that the petitioner was prevented from submitting expert information to the trial court by affidavit or reports for consideration of whether the witnesses were tainted.

Nor was the petitioner's due process right violated by the state court's actions. Although the right to present a defense is a fundamental tenet of due process, "[a] defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 307 (1998). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Ibid.* (internal quotations

omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Ibid.; see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska,* 415 U.S. at 317. Instead the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (internal quotations omitted). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. at 316.

In this case, the petitioner can point to no evidence or testimony that was excluded from the jury's review relative to this issue. The petitioner had the opportunity to demonstrate his theory to the jury that the complainants' testimony was false because of suggestion, coercion, influence from others, and violation of the child interview protocol. He had a meaningful opportunity to present defense witnesses of his own. The petitioner testified on his own behalf. He also had several co-workers, friends and schoolmates, along with his wife, testify on his behalf.

The cannot conclude that the state trial judge's limitations on evidence presented at the pretrial hearing was contrary to or an unreasonable application of federal law. Therefore, the Court will not grant habeas relief on this claim.

III.

The petitioner has not shown that he is in custody in violation of the Constitution of the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk# 1] is **DENIED.**

> s/David M. Lawson
> DAVID M. LAWSON
> United States District Judge

Dated: September 4, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 4, 2008.

> s/Felicia M. Moses
> FELICIA M. MOSES